A. J. WIDMER, Appellant, v. MORAN BOLT AND NUT MANUFACTURING COMPANY, a Corporation, Respondent.

St. Louis Court of Appeals. Argued and Submitted January 8, 1920. Opinion, Filed February 3, 1920.

1. SALES: Breach of Contract: Evidence: Proposal not Accepted: No Contract. Evidence reviewed and *held* that under the evidence plaintiff was not entitled to recover, the evidence failing to show any contract between the parties as alleged.

2. STATUTE OF FRAUDS: Issue Should be Raised by Pleading or by Objection When Evidence is Offered. The issue of the Statute of Frauds should be raised either by pleading or by proper objection when the evidence relating to the contract is offered.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Charles B. Davis,* Judge.

AFFIRMED AND REMANDED.

*Leonard & Sibley, Glen Mohler* and *R. H. Mc-Roberts* for appellant.

(1.) The defense of the Statute of Frauds has been waived by respondent by the failure to object to the evidence on that ground or to request an instruction specifically calling for the defense of the statute. Schmidt v. Rozier, 121 Mo. App. 306; Scharff v. Klein, 29 Mo. App. 549; Clement v. Gill, 59 Mo. App. 482; Gifford v. Willman, 187 Mo. App. 29; Royal Remedy Co. v. Gregory Grocer Co., 90 Mo. App. 53; Van Idour & Co. v. Nelson et al., 60 Mo. App. 523; Penninger v. Reilley, 44 Mo. App. 255; Yeoman v. Mueller, 33 Mo. App. 343; Hackworth v. Zeitinger, 48 Mo. App. 32; Miller v. Harper, 63 Mo. App. 293; Neuvirth v. Engler, 83 Mo. App. 420. (2) A "memorandum" is all that is necessary to comply with the requirements of the Statute of Frauds, the letters in evidence constitute a sufficient memorandum, and a contract was completed by appellant's oral acceptance of the offer contained therein. Revised Statutes of Missouri 1909, sec. 2784; Browne, Statute of Frauds, (5 Ed.), p. 468, sec. 345 Carter v. Western Tie & Timber Co., 170 S. W. 445. (3) Even if a deposit was necessary to the existence of a contract the jury found under the instructions that appellant made the deposit in accordance with respondent's proposal, and the contract was thus consummated. Where the meaning of the written instrument is doubtful or susceptible of more than one meaning, oral evidence of conversations and statements of the parties, prior negotiations and the surrounding circumstances is admissible to aid in the construction and interpretation of the instrument. 13 Corpus Juris 544, and cases cited; 17 Cyc, 662-675, and cases cited; 6 Ruling Case Law 839, sec. 228, sec. 239, and cases cited; Sharp v. Sturgeon, 66 Mo. App. 191; Carter v. Western Tie & Timber Co., 170 S. W. (Mo.) 445; Leesley Bros. v.

Fruit Co., 162 Mo. App. 195; Third Nat. Bank v. St. Charles Sav. Bank, 244 Mo. 554.

*E. C. Slevin* for respondent.

(1) Where it appears from the bill of exceptions that the trial court assigned specific grounds for sustaining a motion for new trial, but neither the order nor the specific grounds are inserted in the bill of exceptions, a presumption will be indulged in favor of the court's action if sustainable under any of the grounds of the motion for a new trial. Peper v. Peper, 241 Mo. 260, 264; State ex rel. v. Thomas, 245 Mo. 65, 73; Clarkson v. Garvey, 179 Mo. App. 9, 17; Bledsoe v. Letson, 215 S. W. 513. (2) An appellate court will not interfere with the discretion of the trial court in granting a new trial upon the ground that the verdict is against the evidence presented at the trial. Haven v. Railroad, 155 Mo. 216; Peper v. Peper, 241 Mo. 260, 265; Higgins v. Higgins, 243 Mo. 164, 171; Clarkson v. Garvey, 179 Mo. App. 9, 18. (3) It is well-settled law that to constitute a contract, the acceptance of an offer must be unequivocal, unconditional, and without the least variance. Gauss & Sons Co. v. Chicago Lumber Co., 115 Mo. App. 114; Sarran v. Richards, 151 Mo. App. 656; Railroad v. Joseph & Bros. Co., 169 Mo. App. 174. (4) If any condition be imposed or any change made from the offer itself, then it becomes a new offer and will not constitute a new contract until the other party has agreed to it. Union Service Co. v. Drug Co., 148 Mo. App. 327, 336; Sarran v. Richards, 151 Mo. App. 656, 660. (5) Where an essential condition of a proposed contract remains unperformed, as, for instance, the making of a cash deposit to guarantee performance, neither party is bound. Produce Co. v. Olsen, 188 Mo. App. 192. (6) A note or memorandum in writing of a proposed contract is required to be signed by the party to be charged with its performance. Sec. 2784, R. S. 1909; 20 Cyc, 272, sec. 2; Black v. Crowther, 74 Mo. App.

480; Cunningham v. Williams, 43 Mo. App. 629. (7) A subsequent oral modification of an agreement is unenforceable unless accepted in writing. Rucker v. Harrington, 52 App. 481; Warren v. Mayer Co., 161 Mo. 112; Arky v. Commission Co., 185 Mo. App. 241. (8) When the appeal is from an order granting a new trial wherein specific grounds are assigned by the court, but neither the order nor these specific grounds appear in the abstract of appellant, no assignment of error is presented to the appellate court. Millar v. Madison Car Co., 130 Mo. 529; Haven v. Railroad, 155 Mo. 216; Peper v. Peper, 241 Mo. 260; Higgins v. Higgins, 243 Mo. 164; Kraemer v. Ward, 149 Mo. App. 432. In this respect differing from an appeal from a final judgment wherein the record proper is before the court. State ex rel. v. Thomas, 245 Mo. 65, 77. It is not incumbent upon respondent to supply such parts of the record as appellant has not abstracted, when the omission appears upon the fact of the abstract. Gorden v. Modern Workmen, etc., 194 Mo. App. 666, 676.

REYNOLDS, P. J.—This is an action to recover damages for breach of contract. The petition is in two counts. At the close of the trial defendant offered an instruction in the nature of a demurrer to the first count of the petition, which the court gave, whereupon plaintiff took an involuntary nonsuit with leave as to that count. As there is no appeal by plaintiff as to that it is unnecessary to consider the first count.

The second count avers that about March 11, 1916, plaintiff entered into a contract with defendant whereby defendant agreed to sell plaintiff 400,000 pounds of round bar steel of certain specified sizes and dimensions, and certain specified quantities of each size, to be of intermediate grade as per standard specifications adopted by the American Steel Manufacturers' Association, to be delivered at an agreed price of $2.486 per hundredweight base f. o. b. St. Louis, payment to be made on delivery of bill of lading on each car consigned to plaintiff; that the defendant agreed, in con-

sideration of the contract, to communicate with the mill supplying defendant with the steel, and have changes in sizes made to suit plaintiff's requirement; that the price of steel had greatly advanced, the market price becoming stronger almost daily; that the defendant failed and refused to communicate with the mill in regard to the desired changes, and notified plaintiff, on March 31, 1916, that the changes plaintiff requested could not be made and that defendant refused to carry out the agreement. Averring his willingness and readiness to perform the conditions of the contract upon his side and to accept the steel and pay the prices agreed upon, but averring that defendant had repudiated the contract and failed and refused to carry out the provisions thereof, plaintiff avers that he has suffered damages in the sum of $2656 for which, with costs, he prays judgment.

The answer, omitting that to the first count, admitting the incorporation of defendant, was a general denial of all the allegations in the second count.

At the trial before the court and jury there was a verdict for plaintiff for the amount claimed under this second count. Defendant filed a motion for a new trial, the seventh ground of which was to the effect that the court had erred in refusing to give the instruction asked by defendant at the close of the case, that under the law, pleadings and evidence plaintiff was not entitled to recover. The court sustained the motion on this ground. From this plaintiff has appealed.

It appears that on March 11, 1916, plaintiff wrote to defendant, stating that it confirmed his acceptance over the telephone of the price of $2.486 per hundredweight, base f. o. b. cars St. Louis, on 200 tons of round bars for shipment in the next four months. The letter then proceeds to state that the writer (plaintiff) believed defendant originally specified in amounts of 50 tons February 11th and 150 tons February 26th, and for lists and qualities specified. Then follows the list as proposed by defendant, the bars running 115,000

pounds 5/8 inch, 140,000 pounds 3/4 inch, 85,000 pounds 7/8 inch, 10,000 pounds 7/16 inch, 50,000 pounds 1/2 inch, the bars to be from 16 to 20 feet long. Follow-ing this list of sizes as proposed by defendant, plaintiff wrote:

"These specifications to be changed and shipment made of 400,000 pounds of 3/8 inch rounds, in 60-foot lengths, or, if the mill prefers, in lengths of from 50 feet to 60 feet in even feet. Material to be intermediate grade, as rolled from billets, as per standard specifications adopted by the association of American Steel Manufacturers, revised April 21, 1914."

In reply to this letter of March 11th, defendant wrote, under date of March 17th, as follows:

"Referring to yours of the 11th inst., the consum-mation of this deal is dependent on the mill.

"We sold you certain sizes and lengths, such as we had specified. Your acceptance contemplates some-thing entirely different, to-wit, instead of sizes ranging from 3/8 inch to 7/8 inch rounds, various amounts of each, you want 400,000 pounds 3/8 inch round and in lengths of 50 to 60 feet. Our specifications are 10 Carbon. Your specifications are intermediate grades as per standard specification for concrete reinforcement bars.

"If the mill agrees to the change in specifications, we will furnish at 2.486 per hundredweight, base f. o. b. cars St. Louis, shipment within four months.

"Terms. On account of change of size and quality, and if such change is made, material would be unsuited for our requirements, we require a deposit of $3000 cash, to be held and a pro rated credit be given on each carload shipped, balance covering each car to be paid for thirty days from date of invoice.

"Kindly arrange for this, as we expect mill will agree to change in specifications."

Afterwards, on March 28th, defendant wrote plaintiff that it had considered a revision of terms as in-dicated in its letter of March 17th and had decided

that it "will accept a $2500 deposit in lieu of the first proposition of $3000, and will grant the same privileges and terms under the $2500 deposit, as we would under the $3000, so kindly arrange this matter at once. It is necessary that we advise the mill and get the proper changes made in this specification, to suit your requirements."

After the receipt of this letter plaintiff testified that he asked an officer of the Mechanics-American National Bank of St. Louis whether that bank would be willing to handle the transaction along the lines mentioned by Mr. Gorman, president of defendant. The cashier told him he would, whereupon plaintiff wrote that bank a letter, stating how the money was to be paid to defendant, in accordance with the understanding had with Mr. Gorman, attaching a check for $2500 to the letter, payable to the Mechanics-American National Bank. The cashier of that bank, under date of March 30th, wrote plaintiff, confirming a telephone conversation, that the bank would prefer to have the matter arranged in the form of a contract, and that plaintiff could deposit the money with the bank in escrow, as security to carry out the contract, and accompanying the letter the bank returned the check to plaintiff. On the same day, March 30th, plaintiff handed to Mr. Gorman a letter addressed to defendant, and acknowledging receipt of the above letters of March 17th and 25th, which stated:

"Regarding our purchase from you of 200 tons of reinforcing bars, we beg to advise that we will be pleased to make the $2500 deposit in question, and in accordance with my conversation over the telephone with your Mr. John Gorman, we are depositing this amount in the Mechanics-American National Bank . . . subject to the following conditions, which you will realize are outlined for our mutual protection and so that you may secure payments without question or delay from the bank on your fulfilment of contract between us. This letter is submitted to you in triplicate,

so that you may accept same and you, the bank and the writer may each have a copy signed by both parties for reference and guidance. The Mechanics-American National Bank will hold this $2500 special deposit for you, subject to the following conditions.''

Conditions follow, the first of which reads:

''On material for which you have already contracted with your mill and submitted specifications for bars, you will request the mill to change the specifications to comply with our requirements, namely, 400,000 pounds of three-eighths inch round bars in lengths of from 50 to 60 feet, varying by even feet. All bars to be billet stock intermediate grade steel, as per standard specifications for concrete reinforcement bars of the Association of American Steel Manufacturers.

''You will present to the Mechanics-American National Bank, within 10 days, a letter stating that your mill has agreed to change the specifications as above, and such letter will be considered as putting in force the contract between you and the writer, in so far as our instructions to the bank are concerned. Should you fail to present such a letter to the bank within 10 days, the writer may, at his option, extend the time for presentation of the letter in question or may consider the contract void.''

The second provision was a direction to the bank as to how the money deposited was to be paid. The other clauses provide that if the contract becomes void, as in the first clause, the $2500 is to be placed to account of plaintiff with the bank, it being set out that these instructions are to cover a four-months' period in which the steel is to be shipped, and are to become void four months from date, and 10 days later the bank was to credit plaintiff's account with any balance not paid to defendant. This was signed by plaintiff and presented to defendant's president for acceptance on March 30, 1916. Mr. Gorman, after reading one or two paragraphs of it, handed it back to plaintiff with the statement that there was to much tape about it. On

March 31, 1916, Mr. Gorman, for defendant, wrote plaintiff that he had a telegram from the mill which was to make. the steel rods, that the mill was shipping that week ¾ inch and ⅞ inch round bars "which is practically the bulk of specifications and therefore we are unable to change the material specified to suit your requirements," the letter further adding that defendant found that the mill with which they had placed the contract for its manufacture "cannot roll smaller rounds or squares than five-eighths inch, and their principal steel product is rolled steel, rerolled from axles." The letter closed with the statement that much to its regret defendant necessarily has to withdraw its proposition of some few days ago and call the deal off. This present action followed.

In the light of the testimony in the case, the instruction which the defendant asked at the close of the case should have been given. It does not appear from the evidence produced that any contract had in point of fact been arrived at between the parties, while various proposals had, from time to time, been made and accepted, the final one proposed by the plaintiff in the letter of March 30th was an entire departure from the original as set out in its letter of March 11th, and it is on the alleged contract, or proposed contract of March 11th that this action is based, and entirely different as to the specifications and kind of steel rods required and an entire variance from the proposal of defendant that the $2500 was to be deposited with it and not. with the bank as plaintiff proposed. That defendant refused to accept the proposal as embodied in this is clear. It follows that we find no error in the action of the trial court in sustaining the motion for a new trial on one of the many grounds assigned, namely, that under the evidence plaintiff was not entitled to recover, the evidence failing to show any. contract between the parties as alleged.

Learned counsel for the respective parties have argued .at great length as to whether changes in the

contract was within the statute of frauds (section 2784, Revised Statutes 1909). As we find no contract at all, it is not necessary to determine this. But if the case again goes to trial, it is well to say that as defendant neither pleaded the statute nor made any objection to the introduction of the testimony offered and supposed to relate to the change, we do not think that is before us, even if material. Learned counsel for respondent claims that in offering his demurrer at the close of the case he had stated to the court that one of the grounds for that was that the statute of frauds was involved. The abstract shows that he did this. But we do not think that is the proper way to raise the issue of the statute. It should be raised either by pleading or by proper objection when the evidence relating to the contract is offered. [Schmidt v. Rozier, 121 Mo. App. 306, 98 S. W. 791; Gifford v. Williams, 187 Mo. App. 29, 1. c. 34, 173 S. W. 53.] We notice this by way of caution in the event that a new trial is had.

The judgment of the circuit court is affirmed and the cause remanded for such further proceedings as may be proper in accordance with this opinion. *Allen, J.*, concurs; *Becker, J.*, in result.